UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROY WARNER,

                         Plaintiff(s),                       REPORT AND
                                                                              RECOMMENDATION

           -against-                                                         CV 09-3557 (SJF) (ETB)

MONSOUR WINN KURLAND & WARNER, LLP
and STEPHEN WINN,

                         Defendant(s).
-----------------------------------------------------------------X

TO THE HONORABLE SANDRA J. FEUERSTEIN, United States District Judge:

By referral dated February 3, 2011, before the Court is a motion for summary judgment on a counterclaim filed on behalf of the defendants, Monsour Winn Kurland & Warner, LLP and Stephen Winn (collectively referred to as "MWK&W"), in this diversity breach of contract action commenced by the plaintiff, Roy Warner ("Warner"), a resident of the State of Florida.

This action arises out of the partnership agreement dated August 8, 2000 (the "Agreement"), among attorneys who formerly practiced together in Nassau County within the defendant law firm. Pursuant to the allegations of the counterclaim, MWK&W claims that it has paid Warner $110,873.68 since his withdrawal from the firm, which is more than he was entitled to under the terms of the partners' Agreement, which is annexed to the Complaint. The counterclaim seeks recoupment in an undetermined amount. In their Rule 56.1 Statement, defendants claim that the overpayment to plaintiff is $40,091.00.[1] (Def. R. 56.1 Statement ¶ 5.)

---

[1] The failure to file an opposing Rule 56.1 Statement pursuant to Rule 56.1(b) is ordinarily deemed an admission by the opposing party. See Local Civ. R. 56.1(c) (stating that the statements contained in the moving party's Rule 56.1 Statement "will be deemed to be admitted

1

By opposing affidavits, the parties take diametrically conflicting views in construing the Agreement that reportedly was signed by all of the parties. MWK&W takes the position that the plaintiff was entitled only to a share of the profits pursuant to Paragraph 1(a) of the Agreement. That provision states:

> 1(a). If any partner voluntarily withdraws, retires, or is terminated as a partner, [such partner hereinafter called "subject partner"], the surviving partnership shall pay the "subject partner" from the date of retirement, withdrawal, or termination five (5) years of payments to be computed as follows: ten (10) percent of the firm's profits in the first year; eight (8) percent of the firm's profits in the second year; seven (7) percent of the firm's profits in the third year; six (6) percent of the firm's profits in the fourth year; and five (5) percent of the firm's profits in the fifth and last year.
>
> 1(b). The amount so computed for each year will be payable at the end of that calendar year, in accordance with the provisions of paragraph 1(a).

Both parties appear to studiously avoid any discussion relating to a retiring partner's monthly draw of $4,250.00 (for a total of $51,000.00[2] for years one through four (1-4) and limited to $40,000.00 for the fifth (5th) year). Paragraph 1(c) states:

> 1(c). A draw, not to exceed $4,250.00 (four thousand two

---

for purposes of the motion unless specifically controverted . . . ."). I have not considered the plaintiff's failure to file an opposing Rule 56.1 Statement as a concession for several reasons: (1) the defendants' Notice of Motion, dated November 13, 2010, is predicated on "plaintiff's Rule 56.1 Statement" - apparently referring to plaintiff's earlier filed Rule 56.1 Statement, (see Docket Entry Number 17 dated Mar. 29, 2010, relating to an earlier terminated motion for summary judgment filed by plaintiff); (2) plaintiff has filed an affidavit in opposition contesting the factual issues relied on by defendants; and (3) application of Rule 56.1(c) would not alter the result here, since the defendants are otherwise not entitled to the summary relief sought in this motion, as discussed infra.

[2] It is unclear whether the monthly draw in the sum of $4,250.00 is a mathematical miscalculation intended to result in an annual draw of $50,000.00, which may be more consistent with the plaintiff's interpretation of Paragraph 3(b) of the Agreement, discussed infra.

>hundred fifty dollars) per month, shall be paid to the "subject partner" and be deducted from the amounts owing to the "subject partner" under paragraphs 1(a) and (b). In the event that a "subject partner's" draw exceeds his percentage as computed in accordance with paragraphs 1(a) and (b), then his draw in the following year shall be reduced by the amount overdrawn, except in the fifth (5th) year where the draw shall not exceed $40,000.00 (forty thousand dollars) for the year.

Defendants maintain that plaintiff was paid the sum of $100,867.00 over the five years following his retirement. Defendants made these payments for plaintiff's medical insurance, automobile payments and credit card bills, which sum, according to defendants, is greater by $40,091.00 than plaintiff's entitlement to a share of the profits as set forth in Paragraph 1(c) of the Agreement. (Def. Mem. of Law 2-4.) Surprisingly, neither party addresses the diminishment provision portion of Paragraph 1(c), quoted above.

The plaintiff takes the position that he is entitled to $50,000.00 per year, in addition to any monies recouped by the firm as out-of-pocket expenses related to the firm's personal injury work. Paragraphs 1(d) and 3(b) respectively provide:

> 1(d). Disbursements charged to a case as of the date of death, retirement, withdrawal or termination, shall be paid whenever received to the "subject partner" in the following percentages: ROBERT MONSOUR (26%), STEPHEN WINN (26%), JOHN KURLAND (26%) and ROY WARNER (22%).[3]
>
> 3(b). If a subject partner earns income from the practice of tort law in the State of New York, his salary[4] shall be reduced to the

---

[3] Warner submits a memorandum signed by three partners, dated January 3, 2001 - following the withdrawal of Monsour - increasing the plaintiff's share in the remaining partnership to one-third (1/3). (Warner Aff., Ex. C.) The plaintiff asserts that this is the sole amendment to the Agreement of August 8, 2000.

[4] It is unclear whether the use of the term "salary" is an artful reference to the annual draw at Paragraph 1(c) in the sum of $51,000.00.

3

extent of such income, except that it shall not be reduced to an amount less than $50,000.00 (fifty thousand dollars) per annum.

## Discussion

When interpreting contracts, New York courts adhere to the "familiar and eminently sensible proposition of law [] that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004) (quotations omitted) (alteration in original). "[T]here is a presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties," particularly when "the instrument is between sophisticated, counseled businessmen." Quantum Chem. Corp. v. Reliance Group, Inc., 580 N.Y.S.2d 275, 276 (1st Dep't 1992) (citations omitted).

"[T]he best evidence of what the parties to a written agreement intend is what they say in their writing." Henrich v. Phazar Antenna Corp., 827 N.Y.S.2d 58, 60 (2d Dep't 2006) (quoting Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002)). "Thus, a written agreement that is complete, clear and unambiguous must be enforced according to the plain meaning of its terms." Henrich, 827 N.Y.S.2d at 60 (quoting Greenfield, 98 N.Y.2d at 569); see also Vermont Teddy Bear, 1 N.Y.2d at 475 ("In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning."). Courts are not permitted to "add or excise terms" to a contract, nor are they permitted to "distort the meaning of those used," thereby creating a new contract than that originally intended by the parties "under the guise of interpreting the writing." Vermont Teddy Bear, 1 N.Y.2d at 475 (citation omitted).

Whether a contract is ambiguous is a question of law for the court to decide. See South Rd. Assoc. v. IBM Corp., 4 N.Y.3d 272, 278 (2005) (citing Greenfield, 98 N.Y.2d at 569); Schmidt v. Magnetic Head Corp., 468 N.Y.S.2d 649, 653 (2d Dep't 1983) ("The threshold question of whether a writing is ambiguous is the exclusive province of the court."). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purpose of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978)) (alteration in original).

Conversely, "[a]n ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (quotation omitted). However, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." Hunt, 889 F.2d at 1277.

Finally, where the court finds that a contract is ambiguous, it should be construed against the drafter. See Cappiello v. ICD Publs., Inc., No. CV 08-02417, 2010 U.S. Dist. LEXIS 85499, at *52 (E.D.N.Y Aug. 19, 2010) ("If a contract is ambiguous it should be construed against the drafter."); see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2d Cir. 1996) (stating that "courts are to construe ambiguous contract terms against the drafter");

SOS Oil Corp. v. Norstar Bank of Long Island, 76 N.Y.2d 561, 568 (1990) ("As in the interpretation of any document, we look for the parties' intent within the four corners of the instrument, ready any ambiguity against the drafter.").

MWK&W have failed to make any payment with respect to any recouped out-of-pocket disbursements, pursuant to Paragraph 1(d) of the Agreement, since plaintiff's retirement on August 1, 2004. (Warner Aff. ¶¶ 8-12.) Annexed as Exhibit D to Plaintiff's affidavit in opposition to defendants' motion for summary judgment is a "Summary of Disbursements as of 2/19/2004" - consisting of disbursements in over 250 named cases totaling $223,738.65 by the law firm of "Monsour & Winn." Plaintiff maintains an entitlement to one-third (1/3) of any sums recouped from such expenses. The defendants fail to address this clear contractual entitlement set forth in Paragraph 1(d) of the Agreement in their motion for summary judgment.

The defendants have additionally failed to comply with the contract provision contained at Paragraph 1(f) of the Agreement which provides:

> 1(f). Profits are to be defined by the manner in which they are reflected in the Partners Reconciliation as prepared by Michael Berg, CPA.

The defendants attach to their moving papers as Exhibit 3 copies of "Monsour Winn Kurland & Warner LLP Profit and Loss" statements, dated December 17, 2009, for the period August 2004 through September 2009. There is no statement in movants' submission with respect to their failure to submit a "Partner's Reconciliation" as prepared by Michael Berg, CPA. Only such a document is determinative of "profits" under the terms of the Agreement.

The plaintiff submits a compliant partner reconciliation provided to him by defendants on January 5, 2006, purportedly for the calendar year 2005. Plaintiff asserts that it is the only such

reconciliation that he has received from the defendants. (Warner Aff. ¶ 17.) According to the plaintiff, that document confirms that a "retired non-competing partner was to receive, at a minimum, $50,000 per year regardless of profits, plus his share of recovered disbursements." (Id.) The affirmation by plaintiff purports to provide support for this interpretation based solely on the partner reconciliation provided. In their reply, the defendants make no mention of their failure to comply with Paragraph 1(f) of the Agreement (annual Partners Reconciliation by CPA Berg) and instead simply counter, without any specifics, that the partner reconciliation statement provided to plaintiff on January 6, 2006 and annexed to plaintiff's affirmation in opposition "does not state that Plaintiff . . . is entitled to $50,000.00 [nor would] the accountant . . . have the authority to modify the contract. . . ." (Burkan Aff. ¶ 9.)

Other genuine material factual issues involve (1) the amendment of the Agreement, vel non, and (2) the drafting of the Agreement. The defendants assert that the Agreement was never modified. (Def. R. 56.1 Statement ¶¶ 7-8.) The plaintiff submits as Exhibit C a signed written memorandum, dated January 3, 2001, changing the partnership share of each surviving partner to one-third (1/3) following the withdrawal of Monsour from the partnership. (Warner Aff. ¶ 10 and Ex. C, annexed thereto.) Similarly, defendants maintain that plaintiff drafted the Agreement, which could be material in construing the ambiguities in the Agreement. (Def. R. 56.1 Statement ¶ 6.) By opposing affidavit, the plaintiff states that "it was a collaborative effort between the four partners" and that he "simply typed . . . the document" following several revisions. (Warner Aff. ¶ 5.)

Lastly, the plaintiff argues that the voluntary payment doctrine bars the defendants from any relief asserted in the counterclaim. The "common law doctrine bars recovery of payments

7

voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." Dillion v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525, 526 (2003). This defense raises issues of fact; however, it is devoid of any merit since plaintiff has failed to file a motion for summary judgment but rather simply includes this request in his papers in opposition.

## RECOMMENDATION

For the foregoing reasons, there are genuine issues of material fact and defendants' motion for summary judgment on the counterclaim should be denied.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
      February 18, 2011

                                     /s/ E. Thomas Boyle
                                     E. THOMAS BOYLE
                                     United States Magistrate Judge